WILLIAM HENEKE *et al.*

*v.*

JOHN FLORING.

*Filed at Springfield September 23, 1885.*

1. RESULTING TRUST—*evidence after great lapse of time.* The evidence to establish a resulting trust after the lapse of fifteen or sixteen years, and especially after many of the principal witnesses having knowledge of the facts are dead, should be of the most satisfactory kind. If the evidence fails to satisfy the court that the money paid for the land was that of the party seeking to establish the trust, no resulting trust can be declared.

2. Where a resulting trust is sought to be established after the lapse of many years, on the ground that complainant's money was used in paying for the same, and that complainant's wife, by conspiracy and fraud, had the conveyance made to her imbecile son by a former marriage, it is incumbent on the plaintiff to establish these facts by very clear and satisfactory evidence, and failing to do so, he can have no relief.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. E. B. ESHER, Mr. WILLIAM RITCHIE, and Mr. S. CORNING JUDD, for the appellants:

The party alleging fraud must clearly and distinctly prove it. The burden of proof lies on him. The law in no case presumes fraud, but in favor of innocence. In no doubtful matter does the court lean to a conclusion of fraud. Kerr on Fraud, 382, 384, 494.

A resulting trust in lands may be proved by parol, or by the admissions or declarations of the purchaser. But the evidence should be clear and unequivocal, and not merely preponderating. There should be no room for reasonable doubt as to the facts. Where there has been a long lapse of time, and the parties have died since the transaction, the case should be looked upon with suspicion, and the trust allowed only upon the most satisfactory evidence. Bigelow on Fraud, 489; *Enos* v. *Hunter*, 4 Gilm. 211.

By whom could the circumstances here be better proved than by Mrs. Floring, who is dead, and by Heneke himself, who is a lunatic? The facts in all cases of resulting trusts must be proved with great clearness and certainty. Perry on Trusts, sec. 137.

The relations between Floring and the half-witted son of his wife, are such as to suggest the probability that the deed to Heneke was meant as a provision in his favor. Perry on Trusts, secs. 143, 144.

Mr. L. V. FERRIS, and Mr. SIMEON STRAUS, for the appellee:

Where there is evidence to support a decree it will not be disturbed, although the evidence might, in the opinion of this court, justify a different result. *Railway Co. v. Moore,* 77 Ill. 217; *Coari v. Olsen,* 91 id. 273; *Wiggins Ferry Co. v. Higgins,* 72 id. 517; *Wiegleb v. Thomsen,* 102 id. 156; *Long v. Fox,* 100 id. 43.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The title to the tract of land in controversy is, or was, in William Heneke, an insane person. His conservator, Caroline Merwitz, had brought an action in ejectment against John Floring, to recover possession of the land for her ward. That suit it was expected would be called for trial at the June term, 1884, of the Superior Court of Cook county, and thereupon the defendant in that suit filed this bill, alleging the land, although conveyed to William Heneke, was, in fact, bought by him, and with his own money, but by the fraud practiced by his wife, Dorothea, since deceased, and the former owner, Caroline Merwitz, the deed was made to William Heneke, without the knowledge or consent of complainant, when it should have been made to him. To this bill the insane owner and his conservator were made defendants. An answer was filed by the conservator, for herself and on behalf of her ward, in which most of the principal allega-

tions of the bill are denied, and in which the conservator claimed the land for her insane or lunatic ward as his rightful property, free from any claim of complainant. A replication to the answer was filed, and the cause was submitted for hearing on the pleadings and the evidence, and the court rendered a decree finding the complainant, on or about the 4th day of March, 1878, bought the land in controversy; that the whole of the purchase money was paid by him, and that the deed to William Heneke was made without his knowledge or consent, and was made with intent to defraud him. It was thereupon decreed that by the conveyance from Caroline Merwitz to William Heneke, of the land, a resulting trust in such land was created in complainant, and it was ordered that the conservator should, within a certain period, convey the land to complainant, and in default thereof it was further ordered the master in chancery should make such conveyance, and the injunction that had previously been awarded restraining the conservator from the further prosecution of the ejectment suit, was made perpetual. An appeal was allowed defendants, and by an agreement of parties, made in open court, the appeal was taken to the Supreme Court in the Central Grand Division.

It appears that on the 4th day of March, 1878, the tract of land in controversy, and another ten acres adjoining it, were both bought of Caroline Merwitz and her husband, since deceased. The deed for the ten acres which are the subject of this litigation, was made to William Heneke, and the deed to the other ten acres was made to the complainant. Both deeds were made on the same day, as a part of the same transaction, and both were recorded at the same time.

Two questions are made on the record: First, whether the land was bought and paid for with the money of complainant; and second, whether the deed was fraudulently made to William Heneke, without the knowledge or consent of complainant. The evidence bearing on the questions stated

is very conflicting, and in some respects is unsatisfactory. Complainant claims he paid the entire purchase money of both tracts of land with his own money,—a part of the purchase price consisting of $1200, money previously loaned to the grantors, and the balance having been paid in money,— $500 at the time of making the deed, and the balance at another subsequent time. On the other hand, it is claimed that Dorothea, then the wife of complainant, paid a large portion of the purchase money from her separate means, and had the deed made to her invalid son, William Heneke, to make suitable provision for his maintenance in case of her death. Some explanation of the conduct of the parties may be found in the fact that William Heneke is the son of the deceased wife of complainant by a former marriage. He was always rather feeble in health, and by some of the witnesses termed a cripple, and years before these events transpired he became a confirmed idiot, or harmless insane person. From the time of his mother's marriage with complainant the boy resided with them, up to the time of his mother's death, which occurred July 25, 1883. It will be remembered both tracts of land were bought March 4, 1878, and soon after the making of the deed complainant erected a small house on the ten acres deeded to the invalid boy, in which the parties afterwards resided. Shortly after the death of the boy's mother he was sent away to the home of his aunt, who is now his conservator. It does not appear that during all the time complainant resided on this tract of land he ever made any complaint, to his wife or to any one else, that the title to this particular ten acres was in William Heneke, until a day or two before the death of his wife, and not until after he had become satisfied her death would soon take place. The evidence bearing on this branch of the case will be referred to again, further on in this opinion.

Concerning the first question made, the difficulty lies in ascertaining whose money was, in fact, used to buy the land.

Unless complainant's money was used in making the payment for the land, of course no resulting trust could arise in his favor. The law applicable in such cases is well understood, and needs no discussion. The evidence to establish a resulting trust after the lapse of so many years should be of the most satisfactory character, and especially since so many of the parties who had most knowledge of the actual facts are now dead. It is obvious the evidence in this record is not of that character. That which tends to support complainant's theory of the case comes mostly from himself. Without conceding he is a competent witness, under the statute, as against the conservator of the insane defendant, still, if his testimony shall be considered with the other testimony in the case, it fails to make any satisfactory case in his favor. As to the payment of the money by himself, his testimony has but little, if any, corroboration from any other source. There is some evidence that his wife paid some, if not all, of the purchase money for the tract of land conveyed to her son. In the conflict that exists it can not be insisted, with any show of reason, that it is so clearly proven that complainant paid his own money for this particular tract of land, that a resulting trust should be declared in his favor,—at least it is not so in the opinion of this court.

As respects the other question raised, it may be said no such conspiracy as is alleged in the bill, to practice a fraud on complainant as to the making of the deed to Heneke, is proved. It is alleged that Caroline Merwitz, one of the grantors, and Dorothea, his wife, combined to defraud complainant, and procured the scrivener, one Senf, to prepare two separate deeds,—one for each ten acres,—and exacted a promise from him that he should not inform complainant of the fact. So far as the wife of complainant is concerned, there is not a scintilla of evidence to connect her with any wrongful conduct in regard to the making of the deed to her son, either by herself or in connection with any other person. It is doubtful,

even, whether she was in Chicago the day on which the deeds were executed. How that may be, however, matters little, for there is no proof from any source that she did anything to practice a fraud on her husband. Nor is there any satisfactory evidence that Caroline Merwitz did anything to deceive or defraud complainant in the making of the deed to the boy, as was done. It is certain she had no personal acquaintance with the scrivener prior to the time she went there, as all parties agree, to procure him to make the deed. She had heard of him before, but had no personal acquaintance. The scrivener resided in Oak Park, and Mrs. Merwitz in Chicago, and complainant resided in the town of Proviso, not far from Oak Park. Complainant was personally well acquainted with the scrivener selected, and had been for many years. It is singular, indeed, if Mrs. Merwitz intended to perpetrate a fraud on complainant, she would go out of the city to a personal friend of complainant, and to one who was almost a total stranger to herself, to procure his assistance to consummate the fraud. She says she was directed by complainant himself to go to Senf to have the deeds prepared, and that does not seem to be denied by him. The whole accusation against her has the air of the utmost improbability. The scrivener says that she asked him not to tell complainant two deeds were prepared,—one for each ten acres,—and he says he promised her he would not. If he made any such promise he did not observe it, for at the time the deeds were made he swears he read both deeds to him, and undertook to explain them to him in German. It is said complainant is an ignorant man; but he was present when the deeds were executed, and no one would claim he was so ignorant he did not know there were two papers or deeds executed at the time. He admits in his testimony he knew two deeds were executed. It is also fully proved he went with the scrivener to the recorder's office, at least a part of the way, alone, when no one of the alleged conspirators was present, and if he wished any

explanation why two deeds were executed, there was ample opportunity to obtain it. The witness Senf says that when he undertook to explain the deeds to complainant, at the house where they were executed, the parties talked so much to complainant, and drew his attention to such an extent, that he could not make him understand the explanation; but they left the house soon after, alone, to go to the recorder's office, carrying with them both deeds, and there was certainly nothing to prevent him from explaining the contents to the complainant, had he wished to do so. It is all a sham and pretence the scrivener was prevented from explaining the contents of the deeds to complainant. Abundant opportunity was afforded him to do so, if he had been prevented, as he says he was, from making any explanation at the house by the parties interested, and especially would he have done so after he had been made aware there was a design to conceal from complainant the making of the deed to the boy. The testimony of this witness adds nothing whatever in support of complainant's theory of the case that he was overreached by these two women in the making of the deed. It rather shows, if it proves anything, the deeds were made precisely as the parties all agreed they should be made. The subsequent conduct of complainant strengthens this hypothesis. It is in proof he had both deeds in his possession a long time before the death of his wife, and during all that time he made no complaint, to her or to any one else, the deed to the boy had been wrongfully procured, or that it had been made in fraud of his rights. The scrivener who prepared them, as he well knew, was his friend and acquaintance, and lived only a few miles from him. He could have taken the deeds to him any day and had them explained to him, but this he did not do.

Assuming, then, as it is thought the evidence warrants the court in doing, the deed to Heneke was made as it was intended it should be, with the knowledge and consent of complainant, his subsequent conduct is consistent with this theory

of the case. It will be remembered the boy was always in delicate health, and constantly grew more infirm, until he became a hopeless idiot. No doubt it was believed by complainant that he and his wife Dorothea would both survive him, and that they would still have the land. This is evident from his interview with the minister, the Rev. Mr. Alberding. He had then become satisfied the death of his wife would soon occur, and his solicitude was how he might still retain the land. The advice he wanted of the minister was, how to get the land. No complaint was made the land had been wrongfully deeded to Heneke. He brought both deeds to the minister from his own custody, and after he had read them he told complainant he could do nothing for him, as the land belonged to the boy. Complainant then told the minister he should do the best for him. The witness then took complainant to the room of his sick wife, and he asked her if complainant should have the land if Wilhelm died, and she said yes, if he would care well for the boy. Prior to the time of the interview with the minister, complainant had both deeds in his possession perhaps for a period of well nigh, if not quite, five years, and when he brought them out for examination there was no pretence he did not know the land had been conveyed to Heneke, or that it was wrongful, but his whole solicitude was to secure the land in some way, now that his wife was about to die and the boy would survive. Another fact not of much consequence, but it tends in some degree to support this view of the case, is, that after the death of his wife he sued Heneke for his board while he resided in his family, and for the taxes he had paid on the land. That suit was, however, abandoned when this suit was commenced. On the whole record considered, no case is made, by any such clear and satisfactory testimony as the law requires, that would warrant the relief decreed to complainant.

The decree will be reversed, and the cause remanded, with directions to the court to dismiss the bill.

*Decree reversed.*